## IN THE UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Sunflower Electric Power Corporation, | ) |
| | ) |
| *Petitioner*, | ) |
| | ) |
| v. | ) Case No. 24-1033 |
| | ) |
| Federal Energy Regulatory | ) |
| Commission, | ) |
| | ) |
| *Respondent*. | ) |

## PETITION FOR REVIEW OF
## SUNFLOWER ELECTRIC POWER CORPORATION

Pursuant to Section 313(b) of the Federal Power Act, 16 U.S.C. § 825*l*(b), and Rule 15(a) of the Federal Rules of Appellate Procedure, Sunflower Electric Power Corporation ("Sunflower") hereby petitions this Court for judicial review of the following Order issued by the Federal Energy Regulatory Commission ("Commission"): *Southwest Power Pool, Inc.*, Docket No. ER22-1846-004, "Order Addressing Arguments Raised on Rehearing" (December 19, 2023) ("December 2023 Order"). A copy of the Order is attached as Exhibit A.

On October 28, 2022, the Commission issued an order accepting Southwest Power Pool, Inc.'s ("Southwest Power Pool") revisions to its Open Access Transmission Tariff ("Tariff") to establish a cost allocation waiver process that would allow entities to request (i) that the remaining costs of one or more specific

prior transmission projects between 100 kV and 300 kV ("Byway Facility(ies)") be fully allocated prospectively on a region-wide basis, and (ii) that the costs of a new or upgraded Byway Facility assigned to a Transmission Owner as a result of a Southwest Power Pool planning process be fully allocated on a region-wide basis. *Southwest Power Pool, Inc.,* Docket Nos. ER22-1846-001, "Order Accepting Tariff Revisions Subject to Condition" (October 28, 2022) ("October 2022 Order").  As noted in Sunflower's pleadings submitted in the underlying proceedings, Southwest Power Pool's Tariff revisions resulted from a robust stakeholder process (in which Sunflower participated) and included important reforms to the Byway Facility cost allocation waiver process.

On July 13, 2023, the Commission the reversed its decision and set aside the October 2022 order, rejected Southwest Power Pool's Tariff revisions, and dismissed its compliance filing as moot. *See Southwest Power Pool, Inc.*, Docket Nos. ER22-1846-002 and ER22-1846-003, "Order Setting Aside Prior Order and Dismissing Compliance Filing" (July 13, 2023) ("Reversal Order"). On August 14, 2023, Sunflower timely filed a request for rehearing of the Reversal Order. *See* 16 U.S.C. § 825*l*(a). On September 14, 2023, the Commission issued a Notice, stating that it would address Sunflower's request for rehearing in a future order consistent with the requirements of 16 U.S.C. § 825*l*(a).  *See Southwest Power Pool, Inc.*, Docket No. ER22-1846-004, "Notice of Denial of Rehearing By Operation of Law

- 2 -

and Providing for Further Consideration" (Sept. 14, 2023) ("Notice"). On September 15, 2023, Sunflower timely submitted a petition for review of the Commission's Reversal Order and Notice, which is currently pending before this Court in D.C. Circuit Case No. 23-1264. Sunflower notes that the Commission's prior actions in the underlying proceedings, including the October  2022 Order, are currently pending judicial review before this Court in D.C. Circuit Case Nos. 23-1054, *et al.*, to which Sunflower is a party.

The December 2023 Order purports to "modify[] the discussion in the Rehearing Order and continue to reach the same result in this proceeding . . ." December 2023 Order, P 2. The instant petition for review of the December 2023 Order is timely filed under 16 U.S.C. § 825*l*(b).

Sunflower operates as a generation and transmission company located in Central and Western Kansas.  Sunflower is a member-owned corporation operated on a non-profit, cooperative basis by six rural electric distribution cooperatives. Sunflower also serves at wholesale, directly or indirectly, nine small cities. Sunflower is a generation owner and also is a transmission-owning member ("Transmission Owner") within the Southwest Power Pool, Inc. ("Southwest Power Pool") region.  As a Southwest Power Pool Transmission Owner, the rates and charges approved by Southwest Power Pool comprise a portion of the costs allocated to Sunflower, and by extension, to Sunflower's customers.

Sunflower is a party to the underlying proceedings before the Commission resulting in the issuance of the foregoing December 2023 Order. Sunflower is aggrieved by the Commission's actions in the underlying proceedings, in which the Commission sustained its Reversal Order.

In addition to the December 2023 Order, attached to this Petition for Review are: (1) the Corporate Disclosure Statement required by Rule 26.1 of the Federal Rules of Appellate Procedure; and (2) a Certificate of Service, with the list of parties to the underlying proceeding.

Respectfully submitted,

*/s/ Adrienne E. Clair*
Adrienne E. Clair
Jecoliah R. Williams
Thompson Coburn LLP
1909 K Street N.W., Suite 600
Washington, D.C. 20006
(202) 585-6900
(202) 585-6969 (fax)
aclair@thompsoncoburn.com
jwilliams@thompsoncoburn.com

*Counsel for Sunflower Electric Power Corporation*

Dated: February 16, 2024

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | | |
|---|---|---|
| Sunflower Electric Power Corporation, | ) | |
| | ) | |
| *Petitioner*, | ) | |
| | ) | |
| v. | ) | Case No. 24-1033 |
| | ) | |
| Federal Energy Regulatory Commission, | ) | |
| | ) | |
| | ) | |
| *Respondent*. | ) | |

**CORPORATE DISCLOSURE STATEMENT OF**
**SUNFLOWER ELECTRIC POWER CORPORATION**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and D.C. Circuit Rule 26.1, Sunflower Electric Power Corporation ("Sunflower") hereby submits this Corporate Disclosure Statement in the above-captioned proceeding.

Sunflower is a not-for-profit power supply electric cooperative to which Rule 26.1 does not apply. *See* Fed. R. App. P. 26.1(a).

Respectfully submitted,


*/s/ Adrienne E. Clair*
Adrienne E. Clair
Jecoliah R. Williams
Thompson Coburn LLP
1909 K Street N.W., Suite 600
Washington, D.C. 20006
(202) 585-6900
(202) 585-6969 (fax)
aclair@thompsoncoburn.com
jwilliams@thompsoncoburn.com

*Counsel for Sunflower Electric Power Corporation*


Dated: February 16, 2024

- 2 -

## CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 16th day of February, 2024, caused to be served copies of the foregoing Petition for Review and Corporate Disclosure Statement by first class mail, postage prepaid to:

Ms. Debbie-Ann Reese, Acting Secretary
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C.  20426

Robert Solomon, Solicitor
Federal Energy Regulatory Commission
888 First Street, N.E.
Washington, D.C. 20426

and by email on all parties on the Commission's service list in the underlying proceeding in Docket No. ER22-1846-000, attached hereto.

*/s/ Adrienne E. Clair*
Adrienne E. Clair

Service List for ER22-1846-000, *Southwest Power Pool, Inc.*

Contacts marked ** must be postal served

| Party | Primary Person or Counsel of Record to be Served | Other Contact to be Served |
|---|---|---|
| Ameren Services Company | Matthew Tomc<br>Director and Assistant General<br>Ameren Corporation<br>1901 Chouteau Ave<br>MC 1310<br>St. Louis, MISSOURI 63040<br>UNITED STATES<br>mtomc@ameren.com | Denice Simpson<br>Regulatory Affairs Specialist<br>Ameren Corporation<br>1331 Pennsylvania Ave, NW<br>Suite 550 South<br>Washington, DISTRICT OF<br>COLUMBIA 20004<br>dsimpson@ameren.com |
| American Electric Power Service Corporation | Stacey Burbure<br>American Electric Power Company<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF<br>COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | LaChon Turner<br>AEP COMPANIES<br>801 Pennsylvania, Avenue, NW<br>Suite 735<br>Washington, DISTRICT OF<br>COLUMBIA 20004-2615<br>lturner@aep.com |
| American Electric Power Service Corporation | Mary-Kate Rigney<br>301 S COLLEGE ST<br>STE 3400<br>CHARLOTTE, NORTH<br>CAROLINA 28202<br>UNITED STATES<br>mary-kate.rigney@troutman.com | Christopher Jones<br>Partner<br>401 9TH ST NW STE 1000<br>WASHINGTON, DISTRICT OF<br>COLUMBIA 20004<br>chris.jones@troutman.com |
| American Electric Power Service Corporation | Stacey Burbure<br>801 Pennsylvania Avenue, NW<br>Washington DC, DISTRICT OF<br>COLUMBIA 20004<br>UNITED STATES<br>slburbure@aep.com | |
| Arkansas Electric Cooperative Corporation | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF<br>COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |

| | | |
|---|---|---|
| Basin Electric Power Cooperative | Jesse Halpern<br>Thompson Coburn LLP<br>1909 K St NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>jhalpern@thompsoncoburn.com | Nicole S Allen<br>Partner<br>Thompson Coburn LLP<br>1909 K Street NW<br>Suite 600<br>Washington, DISTRICT OF COLUMBIA 20006<br>nallen@thompsoncoburn.com |
| Basin Electric Power Cooperative | | Mike Kraft<br>Basin Electric Power Cooperative<br>1717 E Interstate Ave<br>Bismarck, NORTH DAKOTA 58503<br>mkraft@bepc.com |
| Basin Electric Power Cooperative | | Matthew R Kolling<br>Senior Staff Counsel<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>mkolling@bepc.com |
| Basin Electric Power Cooperative | | Jeremy Voll<br>Electrical Engineer III<br>Basin Electric Power Cooperative<br>1717 E INTERSTATE AVE<br>BISMARCK, NORTH DAKOTA 58503<br>jvoll@bepc.com |
| City Utilities of Springfield, Missouri | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | Patrick Smith<br>Corporate Counsel<br>Evergy, Inc.<br>818 S KANSAS AVE<br>TOPEKA, KANSAS 66612<br>UNITED STATES<br>Patrick.Smith@evergy.com | Denise M Buffington<br>Sr Dir Federal Regulatory Affa<br>Kansas City Power & Light Company<br>PO Box 418679<br>Kansas City,KANSAS 64141-9879<br>Denise.Buffington@evergy.com |

| | | |
|---|---|---|
| Evergy Kansas Central, Inc.; Evergy Metro, Inc.; and Evergy Missouri West, Inc. | | James Flucke<br>Manager, Federal Regulatory Af<br>1200 Main<br>Kansas City, MISSOURI 64105<br>jim.flucke@evergy.com |
| ITC Great Plains, LLC | James Bixby<br>Counsel - Regulatory & Legisla<br>ITC Holdings Corp.<br>601 13th St NW<br>Suite 710S<br>RTS-RETURN TO SENDER<br>Washington, DISTRICT OF COLUMBIA 20005<br>UNITED STATES<br>jbixby@itctransco.com | |
| Kansas City, Kansas Board of Public Utilities | Ashley Bond<br>Duncan & Allen LLP<br>Duncan & Allen LLP<br>1730 RHODE ISLAND AVE NW STE 700<br>WASHINGTON, DISTRICT OF COLUMBIA 20036<br>UNITED STATES<br>amb@duncanallen.com | Maurice L Moss<br>mmoss@bpu.com |
| Kansas City, Kansas, Board of Public Utilities | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |
| Kansas Corporation Commission | Carly Masenthin<br>Litigation Counsel<br>Kansas Corporation Commission<br>1500 SW ARROWHEAD RD<br>TOPEKA, KANSAS 66604<br>UNITED STATES<br>c.masenthin@kcc.ks.gov | |
| | | |

| | | |
|---|---|---|
| Kansas Electric Power Cooperative, Inc. | Susan Cunningham<br>SVP & General Counsel<br>Kansas Electric Power Cooperative, Inc.<br>600 SW Corporate View<br>Topeka, KANSAS 66615<br>UNITED STATES<br>scunningham@kepco.org | Mark F Doljac<br>Executive Director, Regulatory<br>Kansas Electric Power Cooperative, Inc.<br>600 SW CORPORATE VW<br>TOPEKA, KANSAS 66615<br>mdoljac@kepco.org |
| Kansas Electric Power Cooperative, Inc. | | Rebecca A Fowler<br>Manager Regulatory Affairs<br>600 S.W. Corporate View<br>Topeka, KANSAS 66615<br>rfowler@kepco.org |
| Midwest Energy, Inc | Richard Lorenzo<br>LOEB & LOEB<br>901 New York Ave., NW<br>Suite 300 East<br>Washington, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>rlorenzo@loeb.com | Nicole Ayn Travers, ESQ<br>Associate<br>LOEB & LOEB<br>900 New York Avenue NW<br>Suite 300 E<br>Washington, DISTRICT OF COLUMBIA 20001<br>ntravers@loeb.com |
| Midwest Energy, Inc | William Dowling<br>V.P. Energy Mgmt<br>Midwest Energy, Inc.<br>1330 CANTERBURY DR<br>HAYS, KANSAS 67601<br>UNITED STATES<br>bdowling@mwenergy.com | |
| Missouri Joint Municipal Electric Utility Commission | Heather Starnes<br>Attorney<br>Healy Law Offices, LLC<br>12 PERDIDO CIR<br>LITTLE ROCK, ARKANSAS 72211<br>UNITED STATES<br>heather@healylawoffices.com | |
| Missouri Joint Municipal Electric Utility Commission | John Coyle<br>Duncan & Allen LLP<br>Suite 700<br>1730 Rhode Island Avenue, N.W.<br>Washington, DISTRICT OF COLUMBIA 20036-3115<br>UNITED STATES<br>jpc@duncanallen.com | |

| | | |
|---|---|---|
| Oklahoma Gas & Electric Company | DeAnn Aderholt<br>Oklahoma Gas and Electric Company<br>321 N. Harvey<br>P.O. Box 321 M/C 1208<br>Oklahoma City, OKLAHOMA 73101<br>UNITED STATES<br>aderhodm@oge.com | Amanda Reyes<br>reyesar@oge.com |
| Oklahoma Gas & Electric Company | William Sultemeier<br>General Counsel and Chief Comp<br>OGE Energy Corp.<br>321 N Harvey Avenue<br>Oklahoma City, OKLAHOMA 73102<br>UNITED STATES<br>sultemwh@oge.com | |
| Public Utility Commission of Texas | Debra Roby<br>Partner<br>Washington Energy Law LLP<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>droby@washingtonenergylaw.com | Stephen D. Journeay<br>Director, Commission Advising<br>Texas Public Utility Commission<br>1701 N. Congress Ave.<br>Austin, TEXAS 78701<br>stephen.journeay@puc.texas.gov |
| Public Utility Commission of Texas | Alan Robbins<br>Partner<br>Washington Energy Law LLP<br>900 17TH ST NW STE 500-A<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>arobbins@washingtonenergylaw.com | |
| Southwest Power Pool, Inc. | Justin Hinton<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72212<br>UNITED STATES<br>jhinton@spp.org | Nicole Wagner<br>Manager-Regulatory Policy<br>Southwest Power Pool Inc.<br>201 WORTHEN DR<br>LITTLE ROCK, ARKANSAS 72223<br>jwagner@spp.org |
| | | |

| | | |
|---|---|---|
| Southwest Power Pool, Inc. | | Michelle L Harris<br>Senior Paralegal<br>Southwest Power Pool Inc.<br>201 Worthen Drive<br>Little Rock, ARKANSAS 72223-4936<br>mharris@spp.org |
| Southwest Transmission, LLC | Christina Switzer<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>cswitzer@efenergylaw.com | Michael R Engleman<br>Engleman Fallon, PLLC<br>1717 K Street NW<br>Suite 900<br>Washington, DISTRICT OF COLUMBIA 20006<br>mengleman@efenergylaw.com |
| Southwest Transmission, LLC | | Sharon Segner<br>Vice President<br>LS Power Associates LP<br>1001 19th Street North<br>Suite 1200<br>Arlington, VIRGINIA 22209<br>ssegner@lspower.com |
| Southwest Transmission, LLC | | Brenda Prokop<br>bprokop@lspower.com |
| Sunflower Electric Power Corporation | | Jecoliah R Williams<br>Associate Attorney<br>Thompson Coburn LLP<br>1909 K ST NW STE 600<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>jwilliams@thompsoncoburn.com |
| Sunflower Electric Power Corporation | | Ala Tamimi<br>Senior VP and Chief Operating<br>SUNFLOWER ELECTRIC COOP INC (KS)<br>425 S 119th St. W<br>WICHITA, KANSAS 67235<br>ATamimi@sunflower.net |
| | | |

| | | |
|---|---|---|
| Sunflower Electric Power Corporation | | Ray Bergmeier<br>Manager of Transmission Policy<br>425 S 119th St. W<br>Wichita, KANSAS 67235<br>RBergmeier@sunflower.net |
| The Empire District Electric Company | Elizabeth Whittle<br>Partner<br>Nixon Peabody LLP<br>799 9TH ST NW STE 500<br>WASHINGTON, DISTRICT OF COLUMBIA 20001<br>UNITED STATES<br>ewhittle@nixonpeabody.com | Sarah B. Knowlton, ESQ<br>General Counsel<br>116 N MAIN ST<br>CONCORD, NEW HAMPSHIRE 03301<br>sarah.knowlton@libertyutilities.com |
| The Empire District Electric Company | | Aaron Doll<br>Senior Director<br>Liberty Utilities<br>602 S Joplin Avenue<br>Joplin, MISSOURI 64801<br>aaron.doll@libertyutilities.com |
| Washington Energy Law LLP | Thomas Steiger<br>Associate<br>900 17TH ST NW STE 500-A STE NW<br>WASHINGTON, DISTRICT OF COLUMBIA 20006<br>UNITED STATES<br>tsteiger@washingtonenergylaw.com | |
| Western Area Power Administration | Gary Hoffman<br>Attorney<br>Western Area Power Administration<br>PO Box 281231<br>Lakewood,COLORADO 80228-8231<br>UNITED STATES<br>ghoffman@wapa.gov | Steven Sanders<br>Operations & Transmission Advi<br>Western Area Power Administration<br>2900 4th Ave North, Room 600<br>Billings, MONTANA 59102<br>sanders@wapa.gov |
| Xcel Energy Services Inc. | bernard liu<br>Sr. Trans. Tariff Consultant<br>414 Nicollet Mall Fl 7<br>Minneapolis, MINNESOTA 55401<br>UNITED STATES<br>bernard.liu@xcelenergy.com | |

# Exhibit A

185 FERC ¶ 61,189
UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Before Commissioners: Willie L. Phillips, Acting Chairman;
James P. Danly, Allison Clements,
and Mark C. Christie.


Southwest Power Pool, Inc.                    Docket No. ER22-1846-004

ORDER ADDRESSING ARGUMENTS RAISED ON REHEARING

(Issued December 19, 2023)

1.      In an order issued October 28, 2022, the Commission accepted, subject to
submission of a compliance filing, Southwest Power Pool, Inc.'s (SPP) proposed
revisions to Attachment J (Recovery of Costs Associated with New Facilities) of its
Open Access Transmission Tariff (Tariff) to establish a process through which, on a
case-by-case basis, all of the costs of a transmission facility with a voltage level between
100 kV and 300 kV (Byway facility) can be allocated on a regional, postage-stamp basis.[1]
In an order on rehearing issued July 13, 2023, the Commission set aside the Tariff Order,
rejecting SPP's proposal without prejudice, and dismissed SPP's compliance filing
submitted in response to the Tariff Order.[2]

2.      On August 14, 2023, Sunflower Electric Power Corporation (Sunflower), Basin
Electric Power Cooperative (Basin), Midwest Energy, Inc. (Midwest Energy), and
Kansas Electric Power Cooperative, Inc. (together, Joint Parties) timely filed a request for
rehearing of the Rehearing Order.  Pursuant to *Allegheny Defense Project v. FERC*,[3] the
rehearing request filed in this proceeding may be deemed denied by operation of law.
However, as permitted by section 313(a) of the Federal Power Act (FPA),[4] we are

---

[1] *Sw. Power Pool, Inc.*, 181 FERC ¶ 61,076 (2022) (Tariff Order).

[2] *Sw. Power Pool, Inc.*, 184 FERC ¶ 61,028 (2023) (Rehearing Order).

[3] 964 F.3d 1 (D.C. Cir. 2020) (en banc).

[4] 16 U.S.C. § 825*l*(a) ("Until the record in a proceeding shall have been filed in a
court of appeals, as provided in subsection (b), the Commission may at any time, upon
reasonable notice and in such manner as it shall deem proper, modify or set aside, in
whole or in part, any finding or order made or issued by it under the provisions of this
chapter.").

modifying the discussion in the Rehearing Order and continue to reach the same result in this proceeding, as discussed below.[5]

## I.    Background

3.     In 2010, the Commission accepted SPP's proposal to implement its Highway/Byway cost allocation method (Highway/Byway),[6] under which SPP allocates the costs of transmission facilities on a voltage threshold basis.[7]  For transmission facilities at 300 kV or above (Highway facilities), SPP allocates 100% of the costs on a regional, postage-stamp basis.[8]  For Byway facilities (those that are between 100 kV and 300 kV), SPP allocates 33% of the costs on a regional, postage-stamp basis and 67% of the costs to the SPP pricing zone in which the facilities are located.  For transmission facilities at or below 100 kV, SPP allocates 100% of the costs to the zone in which the facilities are located.[9]

---

[5] *Allegheny Def. Project*, 964 F.3d at 16-17.  The Commission is not changing the outcome of the Rehearing Order.  *See Smith Lake Improvement & Stakeholders Ass'n v. FERC*, 809 F.3d 55, 56-57 (D.C. Cir. 2015).

[6] *Sw. Power Pool, Inc.*, 131 FERC ¶ 61,252 (2010) (Highway/Byway Order), *reh'g denied*, 137 FERC ¶ 61,075 (2011).  In its order accepting the Highway/Byway cost allocation method, the Commission also accepted SPP's revisions to its unintended consequences review process, which is now known as the Regional Cost Allocation Review process.  *Id.* P 83.

[7] Generally, Highway/Byway cost allocation applies to new transmission facilities included in and constructed pursuant to SPP's Transmission Expansion Plan to ensure the reliability of SPP's transmission system, certain other qualifying network upgrades, and high priority upgrades.  SPP, Tariff, attach. J, § III. (16.0.0), § III.A.2.

[8] The Commission has explained that "postage-stamp" "refers to regionwide allocation of the cost of a transmission facility."  *Transmission Plan. & Cost Allocation by Transmission Owning & Operating Pub. Utils.*, Order No. 1000, 136 FERC ¶ 61,051, at P 741 n.543 (2011), *order on reh'g*, Order No. 1000-A, 139 FERC ¶ 61,132, *order on reh'g & clarification*, Order No. 1000-B, 141 FERC ¶ 61,044 (2012), *aff'd sub nom. S.C. Pub. Serv. Auth. v. FERC*, 762 F.3d 41 (D.C. Cir. 2014).

[9] SPP, Tariff, attach. J, § III.A.2.i.  For network upgrades associated with designated resources that are wind generation resources where the upgrade is located in a different zone than the point of delivery, the costs of facilities 300 kV and above are allocated 100% to the region and the costs of facilities below 300 kV are allocated 67% to the region and 33% to the transmission customer.  *Id.* §§ III.A.3, III.A.4.

4.      In 2021, SPP filed a proposal to establish a process through which entities could petition the SPP Board of Directors (SPP Board) to approve, on a case-by-case basis: (1) the prospective reallocation of costs of certain existing Byway facilities; or (2) the full allocation of costs of certain new Byway facilities so that they would be allocated as Highway facilities (i.e., 100% regionally).  The Commission rejected SPP's proposal, finding that it would grant the SPP Board too much discretion in allocating the costs of Byway facilities without clear standards for how its cost allocation decisions would be made.[10]  In so doing, the Commission also distinguished the proposal from:  (1) SPP's Base Plan Upgrade waiver process, which is limited in scope because only network upgrades identified under SPP's Aggregate Transmission Service Study process that do not otherwise meet the thresholds for Base Plan Upgrades are eligible; and (2) SPP's Transformer Waiver Process, finding that the number of facilities and amount of costs eligible for waivers under the proposal would be notably more expansive.[11]

## II.      **SPP Filing**

5.      On May 10, 2022, SPP submitted proposed revisions to its Tariff to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region on a postage-stamp basis, with a requested effective date of August 1, 2022.[12]

6.      SPP's proposed Tariff revisions specify that to be eligible for 100% regional, postage-stamp cost allocation under the proposed process, an entity must submit a written request to SPP, along with supporting information and analysis, and must satisfy a Capacity Criterion, Flow Criterion, and Benefit Criterion.  To meet the Capacity Criterion, an applicant must show that the total nameplate capacity of generating resources that are physically connected in the zone where the Byway facility is located (and that are not affiliated with load in that zone) exceeds 100% of the prior calendar year's average 12-CP resident load used in calculating the base plan zonal load ratio share for the zone.[13]  To meet the Flow Criterion, an applicant must show that the energy flow on each Byway facility that is attributed to generating resources physically connected in the zone where the Byway facility is located and that are not affiliated with load in that zone exceeds 70% of the sum of flows on the Byway facility attributed to: (1) generating resources affiliated with the load in the zone where the Byway facility is

---

[10] *Sw. Power Pool, Inc.*, 175 FERC ¶ 61,198, at PP 38-39 (2021) (Rejection Order).

[11] *Id.* P 41.

[12] SPP 2022 Transmittal at 1.

[13] SPP, Proposed Tariff, attach. J, § III.E.2.a (13.1.0).

located; and (2) generating resources that are physically connected in the zone and not affiliated with load in the zone.[14]  Lastly, to meet the Benefit Criterion, an applicant must show that the Byway facility for which it is requesting 100% regional, postage-stamp cost allocation provides benefits to load outside the pricing zone where the Byway facility is located.  Benefits may be quantified in terms of adjusted production cost savings or savings through the Integrated Marketplace.  Sufficient benefit to load outside the pricing zone is demonstrated if the benefit exceeds either:  (1) 50% of the Byway facility's projected total benefit to load in the SPP region; or (2) the portion of the Byway facility's annual revenue requirement projected to be borne by load outside the Byway facility's zone under 100% regional, postage-stamp cost allocation.[15]

7.    SPP stated that its proposal is similar in design to the existing Base Plan Upgrade Waiver Process[16] and the Transformer Waiver Process.[17]  SPP noted that in the Commission's acceptance of the Base Plan Waiver Upgrade Process, the Commission stated that SPP must have some degree of flexibility in making cost allocation

---

[14] *Id.* § III.E.2.b.

[15] *Id.* § III.E.2.c.

[16] Under the Base Plan Upgrade Waiver Process, transmission customers may seek waiver so that costs for network upgrades identified under SPP's Aggregate Transmission Service Study process, SPP's process for evaluating long-term transmission service requests, may be classified as Base Plan Upgrade costs for the purpose of cost allocation instead of being directly assigned to the transmission customer.  SPP Tariff, attach. J, § III.C.

[17] SPP 2022 Transmittal at 25 (citing SPP, Tariff, attach. J, § III).  Under the Transformer Waiver Process, entities developing a dual-voltage transformer could seek a waiver from the SPP Board of the standard Highway/Byway cost allocation, under which the costs of a dual-voltage transformer are allocated based on the lower voltage level. Based on the anticipated utilization of the transformer, the entity may seek waiver to allocate the costs of the transformer based on the transformer's higher voltage level instead of the lower voltage level.  SPP, Tariff, attach. J, § III; *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042, at PP 17, 87 (2010), *order denying reh'g and granting clarification*, 136 FERC ¶ 61,050 (2011); *see also Sw. Power Pool, Inc.*, Docket No. ER10-2244-000, at 1 (Feb. 2, 2011) (delegated order).

determinations and did not find that the Base Plan Waiver Upgrade Process gave the SPP Board too much discretion.[18]

8.     On July 28, 2022, Commission staff issued a letter in Docket No. ER22-1846-000 informing SPP that its filing was deficient and requesting additional information (Deficiency Letter).  On August 29, 2022, SPP filed in Docket No. ER22-1846-001 its response to the Deficiency Letter (Deficiency Response).  In response to Commission staff's questions regarding the basis upon which the SPP Board would approve or deny a cost allocation waiver request, SPP stated that, pursuant to its bylaws, "the SPP Board's votes must be held by secret ballot," but that "the SPP Board will base its decision only on whether the Capacity, Flow, and Benefit Criteria are satisfied and shall not consider other factors."[19]

## III.    **Tariff Order**

9.     The Commission in the Tariff Order accepted SPP's proposed Tariff revisions, subject to condition, effective August 1, 2022, and directed SPP to submit a compliance filing.  The Commission found that SPP's proposal to establish a process through which, on a case-by-case basis, the costs of Byway facilities can be fully allocated to the SPP region on a postage-stamp basis is just and reasonable and not unduly discriminatory or preferential because it will help ensure that the costs of Byway facilities are allocated in a manner that is at least roughly commensurate with estimated benefits, consistent with the cost causation principle.[20]  Moreover, the Commission found that allocating 100% of a Byway facility's costs to the SPP region on a postage-stamp basis if the facility is shown to provide significant benefits to zones other than the zone in which the Byway facility is located will better align the allocation of the costs of the Byway facility with its beneficiaries.[21]

10.     The Commission found that it is reasonable for SPP to analyze benefits under the Benefit Criterion based on adjusted production cost savings and/or savings through the Integrated Marketplace due to the Commission's prior acceptance of cost allocation

---

[18] SPP 2022 Transmittal at 25 (citing *Sw. Power Pool, Inc.*, 111 FERC ¶ 61,118, at P 57 (SPP Base Plan Upgrades Order), *order on reh'g*, 112 FERC ¶ 61,319 (2005); *Sw. Power Pool, Inc.*, 132 FERC ¶ 61,042 at PP 86-88).

[19] *See* Tariff Order, 181 FERC ¶ 61,076 at P 36 (citing Deficiency Response at 7-9).

[20] *Id.* PP 47-48.

[21] *Id.* P 48.

proposals based on these types of transmission facility benefits.[22]  The Commission also found that SPP's proposal addressed the concerns that the Commission articulated in the Rejection Order regarding discretion because the proposal establishes clear eligibility criteria – the Capacity, Flow, and Benefit Criteria – and limits the SPP Board's consideration to whether a Byway facility meets those criteria when deciding whether to grant or deny a request for 100% regional postage-stamp cost allocation.[23]

11.     The Commission, however, found that there were two aspects of the proposed Tariff language that did not provide sufficient specificity about the limitations on SPP's discretion that SPP articulated in its Deficiency Response.  First, the Commission directed SPP to revise its proposed Tariff language by replacing "may" with "shall" in relation to how the SPP Board quantifies the benefit of a Byway facility so that it states that "[t]he benefit *shall* be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace."[24]

12.     Second, the Commission also found that the proposed Tariff language did not specify the basis upon which the SPP Board will make its decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region.  The Commission noted that, in the Deficiency Response, SPP stated that the discretion exercised by the SPP Board is limited only to whether the Capacity, Flow, and Benefit Criteria have been met, and that the SPP Board does not have the discretion to approve a request when one or more of the specified criteria have not been met or to substitute alternative criteria in lieu of those defined in the proposed Tariff language.[25]  Therefore, the Commission directed SPP to add subsection ii to section III.E.5.j of SPP's Tariff to specify that the SPP Board's decision to approve or deny a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be based solely on whether the Capacity, Flow, and Benefit Criteria are satisfied.[26]

13.     Further, the Commission found that, contrary to protesters' arguments that reallocation of transmission costs would undermine transparency and predictability in

---

[22] *Id.* P 51 (citing *Midcontinent Indep. Sys. Operator, Inc.*, 170 FERC ¶ 61,242, at P 31 (2020); *Sw. Power Pool, Inc.*, Docket Nos. ER18-2243-000 and ER18-2245-000 (Oct. 10, 2018) (delegated order)).

[23] *Id.* P 53.

[24] SPP, Proposed Tariff, attach. J, § III.E.2.c.

[25] Tariff Order, 181 FERC ¶ 61,076 at P 55 (citing Deficiency Response at 9-10).

[26] *Id.*

cost allocation, the process for evaluating a request to allocate 100% of a Byway facility's costs on a postage-stamp basis to the entire SPP region will be described in the Tariff with adequate specificity once SPP satisfies the Commission's directives in the Tariff Order.[27]

14.    The Commission found that SPP's proposal, like other aspects of SPP's Tariff approved by the Commission that provide flexibility to SPP's board regarding cost allocation, will provide the SPP Board with flexibility in cost allocation for specific Byway facilities, on a case-by-case basis, under specified conditions that are clearly outlined in the Tariff.  The Commission noted that regional transmission organizations/independent system operators (RTO/ISO), as independent entities, have governing boards with some discretion in making decisions related to transmission planning and cost allocation.[28]

## IV.    **Compliance Filing**

15.    On November 16, 2022, SPP submitted a compliance filing in response to the Tariff Order (Compliance Filing).  In its Compliance Filing, SPP submitted revised Tariff sheets that:  (1) revise section III.E.2.c of Attachment J of the Tariff to state that benefits from a proposed cost allocation "shall be quantified in terms of adjusted production cost and/or savings through the Integrated Marketplace;" and (2) add a new subsection ii in section III.E.5.j of Attachment J of the Tariff such that a decision by the Board to approve or deny a request for waiver shall be based solely on whether the three criteria in section III.E.2 of the Tariff are all satisfied.[29]

## V.    **Rehearing Order**

16.    In response to requests for rehearing of the Tariff Order filed by Indicated Transmission Owners[30] and Indicated Utilities,[31] the Commission in the Rehearing Order

---

[27] *Id.* P 56.

[28] *Id.* P 60 (citing SPP Base Plan Upgrades Order, 111 FERC ¶ 61,118 at P 57).

[29] SPP Compliance Filing, Docket No. ER22-1846-002 (filed Nov. 16, 2022) (emphasis to highlight added revision).

[30] Indicated Transmission Owners consist of Southwestern Electric Power Company, Public Service Company of Oklahoma, Southwestern Public Service Company, and Oklahoma Gas & Electric Company.

[31] Indicated Utilities consist of City Utilities of Springfield, Missouri, Kansas City Board of Public Utilities, and Missouri Joint Municipal Electric Utility Commission.

set aside the Tariff Order and rejected SPP's proposal in this proceeding. The Commission found that SPP had not met its burden under section 205 of the FPA[32] to show that the process that SPP proposed for allocating 100% of the costs of a Byway facility to the SPP region on a postage-stamp basis will result in outcomes that are just and reasonable and not unduly discriminatory or preferential. Given that it rejected SPP's proposal, the Commission also dismissed as moot SPP's Compliance Filing.

17.    The Commission found that SPP's proposal, even as modified by the Commission's directives in the Tariff Order, continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities, and that SPP's revisions to its Tariff do not fully address the Commission's earlier concerns with the discretion afforded to the SPP Board.[33] The Commission stated that it need not address the other arguments raised on rehearing because it set aside the Tariff Order on the basis that SPP's proposal provided too much discretion to the SPP Board.[34]

18.    The Commission found that, despite the proposed Tariff language limiting the basis upon which the SPP Board could reallocate the costs of a Byway facility to the entire SPP region, the proposed Tariff language still allows for a significant amount of discretion because it does not require the SPP Board to approve a reallocation request if the criteria are met. Thus, the Commission stated, the SPP Board could deny a requested reallocation where SPP staff has determined that the criteria are met or, conversely, approve a reallocation where SPP staff has determined that the criteria are not met. The Commission reasoned that the SPP Board's discretion to make decisions that are potentially inconsistent with whether the criteria set forth in the Tariff are met could result in unduly discriminatory outcomes.[35]

19.    The Commission found that SPP's proposal, even as modified by the compliance directive in the Tariff Order, creates the opportunity for arbitrary and inconsistent outcomes because the proposed Tariff language does not define the circumstances under which the two types of benefits used for the Benefit Criterion (adjusted production cost savings and savings in the Integrated Marketplace), or both, will be considered. The Commission stated that, under SPP's proposal, as modified by the compliance directive, the SPP Board would be allowed to rely on one type of benefit when reviewing one request, and another type of benefit when reviewing another request, regardless of

---

[32] 16 U.S.C. § 824d.

[33] *See* Rehearing Order, 184 FERC ¶ 61,128 at P 50 (citing Rejection Order, 175 FERC ¶ 61,198 at PP 40-41).

[34] *Id.* P 50 n.86.

[35] *Id.* P 51.

Document Accession #: 20231219-3049          Filed Date: 12/19/2023

whether the circumstances of both requests were identical.  The Commission concluded that this potential for disparate treatment raises the potential for unduly discriminatory cost allocation outcomes.[36]

20.    The Commission recognized that the RTO/ISO model provides an element of discretion to an RTO/ISO's board of directors.  But the Commission found that SPP's proposal would provide the SPP Board with the discretion to change which cost allocation method applies to specific Byway facilities after they have been selected as a Byway facility.  The Commission concluded that SPP has not demonstrated that the way it has proposed to extend the SPP Board's discretion is just and reasonable and not unduly discriminatory or preferential.[37]

## VI.    **Request for Rehearing**

21.    Joint Parties argue that the Commission's decision in the Rehearing Order to reject SPP's proposal and compliance filing is arbitrary and capricious, departs from Commission precedent, and fails to consider the record in this proceeding.  According to Joint Parties, reverting to SPP's current Highway/Byway cost allocation method is unjust, unreasonable, and unduly discriminatory and preferential as applied in the few SPP pricing zones where generation that is not affiliated with load in the zone significantly exceeds the amount of load in the zone (i.e., "Generation-Rich Zones").[38]  Joint Parties urge the Commission either to:  (1) grant rehearing of the Rehearing Order, reinstate SPP's Tariff proposal, effective August 1, 2022, and accept SPP's compliance filing; or (2) take measures such as establishing hearing and settlement judge procedures or initiating a proceeding, *sua sponte*, under FPA section 206.[39]

22.    Joint Parties represent that the Rehearing Order imposes costs on customers in certain geographic areas in SPP that do not receive commensurate benefits, particularly at a time when there is an influx of wind generation resources on the SPP system.  Joint Parties assert that the Commission's rejection, then acceptance, and later rejection of SPP's proposals have caused parties to spend considerable resources over several years,

---

[36] *Id.* P 52.

[37] *Id.* P 54.

[38] Request for Rehearing at 3-4.

[39] *Id.* at 4 (citing 16 U.S.C. § 824e).

failed to address ongoing cost burdens on customers in certain SPP pricing zones, and encouraged costly litigation before the Commission.[40]

## VII.   Discussion

### A.   Procedural Issues

23.   On September 1, 2023, the Kansas Corporation Commission filed a motion for leave to answer and answer in response to Joint Parties' request for rehearing of the Rehearing Order.  Rule 713(d)(1) of the Commission's Rules of Practice and Procedure, 18 C.F.R. § 385.713(d) (2022), prohibits an answer to a request for rehearing.  Accordingly, we deny the Kansas Corporation Commission's motion for leave to answer to the request for rehearing and reject the answer.

24.   On September 6, 2023, in Docket No. ER22-1846-000, Senators Roger Marshall and Jerry Moran submitted comments urging the Commission to reinstate the Tariff Order that accepted SPP's proposal.

### B.   Substantive Issues

#### 1.   Whether the Commission Sufficiently Explained its Reversal of the Tariff Order and Departed from Precedent Granting Discretion to other RTOs

##### a.   Request for Rehearing

25.   Joint Parties argue that there are no changed circumstances since the Tariff Order, and the Commission failed to explain why it reversed its determination in the Tariff Order that SPP's proposal sufficiently addressed the Commission's concerns in the Rejection Order regarding the SPP Board's discretion to make cost allocation decisions.[41] Joint Parties state that the Commission's finding in the Rehearing Order that SPP's proposal provides too much discretion to the SPP Board departs from Commission precedent granting RTO/ISO boards discretion and flexibility over rates and cost allocation, such as:  (1) the SPP Base Plan Upgrade Waiver Process that allows the SPP Board to reclassify a new or changed Designated Resource as a Base Plan Upgrade; (2) the SPP Board's ability to approve proposed Interregional Projects; and (3) PJM

---

[40] *Id.* at 4-8.

[41] *Id.* at 11-13.

Interconnection, L.L.C.'s (PJM) Office of Interconnection authority to resolve financial transmission rights (FTR) defaults.[42]

26.     Joint Parties state that SPP's Base Plan Upgrade Waiver Process provides the SPP Board with the discretion to reclassify a new or changed Designated Resource as a Base Plan Upgrade based on a non-exhaustive list of factors.[43]  Joint Parties represent that SPP acknowledged that any authority that it exercised under the proposal in the instant proceeding had to comply with the FPA.  Joint Parties describe PJM's Office of Interconnection's authority to resolve disputes over FTR defaults as restricted by the limits of the FPA and broader than the SPP Board's proposed authority that the Commission rejected in the Rehearing Order.[44]  Joint Parties state that the fact that in PJM, the Office of Interconnection was granted the discretionary authority at issue whereas in this proceeding, the SPP Board wields the relevant discretion, does not justify the Commission's disparate treatment.[45]  According to Joint Parties, "[t]he Commission has not at all explained or justified its policy whereby on the one hand, an RTO can have broad discretion because the FPA provides protection against discriminatory treatment but on the other hand, an RTO Board cannot exercise far more narrow discretion, when the FPA applies in both instances."[46]

27.     Joint Parties state that the Commission did not explain why it is permissible for RTO boards to determine which transmission facilities are selected in a regional transmission plan for purposes of cost allocation while, here, it is impermissible for the SPP Board to determine under narrow criteria which cost allocation method applies to those transmission facilities.[47]

28.     Joint Parties state that SPP already addressed the Commission's concerns that the SPP Board could only approve a request for cost allocation where the three criteria are met.  According to Joint Parties, SPP confirmed that SPP Board discretion is limited to whether all criteria are met and the SPP Board must decide whether the evidence shows

---

[42] *Id.* at 14-19.

[43] *Id.* at 15 (citing Tariff Order, 181 FERC ¶ 61,076 at PP 57, 60 & n.129; SPP Base Plan Upgrades Order, 111 FERC ¶ 61,118 at P 57).

[44] *Id.* at 15-18 (citing *PJM Interconnection, L.L.C.*, 174 FERC ¶ 61,064, at PP 5, 16, 27, 31 (2021) (PJM FTR Order); SPP Deficiency Response at 11).

[45] *Id.* at 18 n.46.

[46] *Id.* at 17-18 (citing Tariff Order, 181 FERC ¶ 61,076 at PP 48, 54).

[47] *Id.* at 18-19.

Document Accession #: 20231219-3049     Filed Date: 12/19/2023

that all three criteria are satisfied. Joint Parties also state that SPP represented that the SPP Board must reject a waiver application if any of the three criteria are not met. Joint Parties argue that the Commission in the Rehearing Order did not address SPP's explanation that the SPP Board could not "deny or approve a waiver request where the criteria for the waiver are or are not met, respectively."[48]

### b. **Commission Determination**

29.     As an initial matter, the Commission may reverse its prior position as long as the Commission reasonably explains itself, but it does not need to establish that its newer position is superior to the Commission's earlier position.[49] The Commission in the Rehearing Order reasonably explained that it set aside its prior acceptance of SPP's proposal because that proposal permits the SPP Board to "deny a requested reallocation where SPP staff has determined that the criteria are met or, conversely, approve a reallocation where SPP staff has determined that the criteria are not met."[50] The Commission also found that, while those criteria must be met in order for the SPP Board to approve a requested reallocation, "there is no proposed requirement for the SPP Board to approve the request if the Byway facility satisfies the three criteria."[51] In other words, a request to reallocate the costs of a Byway facility that satisfies the criteria may be granted only if the SPP Board exercises its discretion to do so – regardless of whether some or all of the three criteria are met. We find that that there is potential for unduly discriminatory or preferential outcomes among otherwise similarly situated Byway facilities given the SPP's Board's discretion as described above. The Commission reasonably found that SPP's Tariff did not require the SPP Board to reach specific results if certain criteria are satisfied and that, without those requirements, SPP had proposed to provide too much discretion to its Board.[52]

---

[48] *Id.* at 20-21 (citing SPP Deficiency Response at 8, 10; SPP Tariff, attach. J, § III.E.2).

[49] *Ass'n of Oil Pipe Lines v. FERC*, 876 F.3d 336, 342 (D.C. Cir. 2017) (The Commission "need not demonstrate 'that the reasons for the new policy are *better* than the reasons for the old one; it suffices that the new policy is permissible . . . , that there are good reasons for it, and that the agency *believes* it to be better.'" (quoting *FCC v. Fox Television Studios, Inc.*, 556 U.S. 502, 515 (2009) (emphasis by Supreme Court))).

[50] Rehearing Order, 184 FERC ¶ 61,028 at P 51.

[51] *Id.*

[52] *Id.*

30.     While we reiterate the Commission's recognition in the Rehearing Order that "the RTO/ISO model provides an element of discretion to an RTO/ISO's board of directors,"[53] we disagree with Joint Parties that the Commission ran afoul of its precedent affording discretion to RTOs/ISOs.  In Order No. 1000, the Commission provided discretion to public utility transmission providers in a transmission planning region as to how transmission needs are identified, as well as how and whether transmission facilities, including interregional transmission facilities, as noted by the Joint Parties,[54] are selected in the regional transmission plan for the purposes of cost allocation to meet those needs.[55] In contrast, Order No. 1000, while not specifying how the costs of an individual regional transmission facility should be allocated, provides that *ex ante* cost allocation methods must be known "in advance."[56]  As observed by the Commission in the Rehearing Order, "SPP's proposal would provide the SPP Board with the discretion to change which cost allocation method applies to specific Byway facilities after they have been selected as a

---

[53] *Id.* P 54.

[54] Request for Rehearing at 15.

[55] *See, e.g.*, Order No. 1000, 136 FERC ¶ 61,051 at P 12 ("The transmission planning and cost allocation requirements in this Final Rule . . . are focused on the transmission planning *process*, and not on any substantive outcomes that may result from this process."), P 149 (providing "public utility transmission providers in each transmission planning region the flexibility to develop, in consultation with stakeholders, procedures by which the public utility transmission providers in the region identify and evaluate the set of potential solutions that may meet the region's needs more efficiently or cost-effectively"), P 157 (declining to "prescribe the exact manner in which public utility transmission providers must fulfill the requirements of complying with the regional transmission planning principles" and allowing "public utility transmission providers developing the regional transmission planning processes to craft, in consultation with stakeholders, requirements that work for their transmission planning region"), P 331 (clarifying that "the Commission is not dictating that any particular proposals be accepted or that selected transmission facilities be constructed").

[56] *See, e.g.*, *id.* P 560 (noting that "different cost allocation method or methods for different types of transmission facilities" are permissible, but "each method would have to be determined in advance for each type of facility"), P 562 (requiring "development of a cost allocation method or a set of methods in advance of particular transmission facilities being proposed so that developers have greater certainty about cost allocation and other stakeholders will understand the cost impacts of the transmission facilities proposed for cost allocation in transmission planning").

Byway facility."[57]  We find that the discretion afforded to the SPP Board in the Byway cost allocation reallocation process would reduce the certainty as to the cost allocation of potential Byway transmission facilities; thus, rejecting the proposal is consistent with the *ex ante* principle in Order No. 1000.[58]

31.     In their request for rehearing, Joint Parties argue that the Commission in the Rehearing Order departed from Commission precedent without explanation, referring to the SPP Board's discretion to reclassify certain network upgrades as Base Plan Upgrades and PJM's discretion to resolve defaults in the PJM FTR market.[59]  We acknowledge that the Base Plan Upgrade Waiver Process provides the SPP Board with discretion regarding which non-exhaustive criteria it may consider when reclassifying certain network upgrade costs to be eligible for regional transmission cost allocation.[60]  Such network upgrades are not regional transmission facilities selected in SPP's regional transmission plan for purposes of cost allocation and, as such, are not subject to Order No. 1000's *ex ante* cost allocation requirement.  Instead, as the Commission previously acknowledged, the process that SPP uses to evaluate the need for network upgrades to address individual requests for transmission service "does not address broader regional transmission needs, consider transmission needs driven by public policy requirements, or alleviate congestion as necessary to consider it a regional transmission planning process under Order No. 1000," and thus, it "is not an Order No. 1000 regional transmission planning process."[61]  As a result, SPP's Base Plan Upgrade Waiver Process waiver criteria need not conform

---

[57] Rehearing Order, 184 FERC ¶ 61,028 at P 54.

[58] *See* Order No. 1000, 136 FERC ¶ 61,051 at PP 499 ("We agree with many commenters that the lack of clear *ex ante* cost allocation methods that identify beneficiaries of proposed regional and interregional transmission facilities may be impairing the ability of public utility transmission providers to implement more efficient or cost-effective transmission solutions identified during the transmission planning process."), P 559 ("In the absence of clear cost allocation rules for regional transmission facilities, there is a greater potential that public utility transmission providers and nonincumbent transmission developers may be unable to develop transmission facilities that are determined by the region to meet their needs.  Conversely, greater certainty as to the cost allocation implications of a potential transmission project will enhance the ability of stakeholders in the regional transmission planning process to evaluate the merits of the transmission project.").

[59] *See* Request for Rehearing at 15-19.

[60] *See* SPP Tariff, attach. J, § III.C.1.

[61] *Sw. Power Pool, Inc.*, 149 FERC ¶ 61,048, at P 173 (2014), *aff'd sub nom. Okla. Gas & Elec. Co. v. FERC*, 827 F.3d 75 (D.C. Cir. 2016).

with Order No. 1000's rules regarding *ex ante* cost allocation.  Here, by contrast, Byway facilities are part of SPP's regional transmission planning process under Order No. 1000 and, therefore, they are subject to Order No. 1000's requirement that there be an *ex ante* regional cost allocation method.

32.     Additionally, our concerns regarding the extent of the SPP Board's discretion under SPP's proposal are elevated here because, under SPP's proposed process, the Board does not set out its decision to grant or deny a request to reallocate the costs of Byway facilities.[62]  Without such particulars, stakeholders will be unable to discern whether the SPP Board has applied the criteria in a manner that is not unduly discriminatory or preferential.

33.     Moreover, as the Commission explained in the Rejection Order, "[t]he Base Plan Upgrade waiver process . . . is limited in scope because only network upgrades identified under SPP's Aggregate Transmission Service Study process that do not otherwise meet the thresholds for Base Plan Upgrades under that process are eligible."[63]  By contrast, under SPP's proposal in this proceeding, like SPP's proposal that the Commission rejected in the Rejection Order, all Byway facilities are eligible to seek a reallocation of costs, and that fact of SPP's proposal could reach farther than the Base Plan Upgrade waiver process.  Our concerns regarding the scope of the two different programs outweigh the fact that both the Base Plan Upgrade waiver process and SPP's proposal in this proceeding relate to regional transmission cost allocation and bestow discretion upon the SPP Board to grant a cost reallocation request.  As suggested by the Rejection Order, we find it appropriate to consider the scope of facilities subject to reallocation, among other factors addressed in the Rehearing Order and here, when evaluating the SPP Board's discretion under SPP's proposal given the potential for significant cost reallocation.  Further, whether PJM's Tariff affords more discretion in evaluating FTR defaults than SPP's proposal affords the SPP Board in evaluating Byway cost allocation waiver requests is not relevant.  The Commission's rules regarding *ex ante* cost allocation methods under Order No. 1000 apply to transmission facilities selected in the regional

---

[62] While the SPP Board votes in secret, this feature of SPP's Board governance is not at issue in this proceeding nor do we suggest any deficiency in the SPP Board's voting procedures.  *See* SPP, Governing Documents Tariff, § 4.6 Bylaws (Functioning of the Board of Directors), § 4.6.3 (Quorum and Voting) (3.0.0) ("Voting will be by secret ballot submitted either in person or remotely by email or other reliable electronic means.  The Corporate Secretary will collect and tally the ballots, and announce the results of a vote.  Only voting results will be announced and recorded in the minutes; individual votes will not be announced or recorded.").

[63] Rejection Order, 175 FERC ¶ 61,198 at P 41 (footnote omitted) (citing SPP Tariff, attach. J, § III.C.1).  The Aggregate Transmission Service Study process is SPP's process for evaluating long-term transmission service requests.  *Id.* P 41 n.78.

Document Accession #: 20231219-3049          Filed Date: 12/19/2023

transmission plan for purposes of cost allocation, which we must consider when evaluating a request such as the one here to allow reallocation of the cost of a Byway facility, and do not apply to FTR defaults.

### 2. Whether the Commission Ignored Evidence that SPP's Existing Tariff Unjustly and Unreasonably Allocates Costs of Byway Facilities to Zones where the Costs Significantly Exceed the Benefits

#### a. Request for Rehearing

34.     Joint Parties argue that the evidence from SPP, the SPP Cost Allocation Working Group, Sunflower, and Midwest Energy in this proceeding shows that SPP's existing Highway/Byway transmission cost allocation method is unjust and unreasonable and does not reflect cost causation principles in the pricing zones where generation unaffiliated with load in the zone significantly exceeds the amount of load in the zone. Joint Parties state that growth in renewable energy resources in pricing zones far from load they serve have unaffiliated nameplate generation capacity physically connected in these zones that exceeds the entire average peak loads in these zones. Joint Parties contend that the Sunflower, Midwest Energy, and Oklahoma Gas & Electric pricing zones have been disproportionately affected by the growth of renewable wind generation resources that include notifications to construct Byway Facilities to facilitate the export of wind energy to other areas in SPP.[64]

35.     Joint Parties state that SPP's 2019 Holistic Integrated Tariff Team Report recognized the disproportionate allocation for transmission upgrades to facilitate the export of excess renewable energy in SPP. Joint Parties describe that report as recommending that SPP establish a narrow process to fully allocate costs for specific transmission projects between 100 and 300 kV on a region-wide basis based on the regional benefits from these facilities.[65] Joint Parties also cite several experts' affidavits that demonstrate the need for SPP's proposal in this proceeding.[66]

---

[64] Request for Rehearing at 22-23 (citing SPP Filing at 9-13; Sunflower, Basin, and Midwest Comments, Docket No. ER22-1846-000, at 11, attach. A, B (filed May 31, 2022)).

[65] *Id.* at 24 (citing SPP Filing at 2-4 (citing SPP, Holistic Integrated Tariff Team Report, at 46 (July 23, 2019), https://www.spp.org/documents/60323/hitt%20report.pdf)).

[66] *Id.* at 24-27 (citing Supporting Parties' Comments, Tamimi Aff. ¶¶ 4-5, 8; Supporting Parties' Comments, Dowling Aff. ¶¶ 5-6).

36.     Joint Parties argue that no party to this proceeding disputes the low benefits
entities in the "Generation-Rich Zones" receive in exchange for the heavier cost burdens
these entities must carry to support Byway facilities, regardless of the benefits accruing to
the entire SPP region.  Joint Parties contend that the Commission in the Rehearing Order
failed to address the evidence of unjust and unreasonable rates entities will incur from
reverting to the prior Highway/Byway process.[67]  Joint Parties assert that, without any
mechanism to remedy the unjust and unreasonable cost allocation for the Sunflower and
Midwest Energy pricing zones, customers in these zones will bear an unreasonable share
of the cost of Byway facilities used to transmit generation that is not affiliated with load
in the zone from these zones to the SPP region, and customers outside of these zones who
benefit from these Byway facilities will not have to pay for costs commensurate with
their benefits.[68]

## b.     Commission Determination

37.     We recognize that SPP has stated that it proposed the process through which, on a
case-by-case basis, costs of certain Byway facilities can be allocated on a regional,
postage-stamp basis to rectify perceived problems with the status quo and that SPP
stakeholders devoted substantial time and resources to address those perceived problems
through SPP's proposal.  However, Joint Parties' arguments about SPP's existing
Highway/Byway cost allocation method being unjust and unreasonable are misplaced in a
proceeding addressing a filing made under FPA section 205.  The proper vehicle for
challenging existing tariff provisions as unjust and unreasonable is a complaint under
FPA section 206.[69]  In an FPA section 205 proceeding, the Commission is limited to
reviewing whether the filed proposal is just, reasonable, and not unduly discriminatory or
preferential.[70]  Here, the Commission concluded the proposal was not just and reasonable
because it provided the SPP Board with too much discretion in allocating the costs of
Byway Facilities, which is particularly concerning given that waiver of Byway facility
cost allocation would undermine Order No. 1000's requirement that the transmission cost
allocation method be determined in advance, that every Byway facility could be eligible
for cost reallocation under SPP's proposal, and that the SPP Board need not articulate its

---

[67] *Id.* at 25-27.

[68] *Id.* at 27-28.

[69] 16 U.S.C. § 824e.

[70] *Id.* § 824d; *see also City of Winnfield v. FERC*, 744 F.2d 871, 874-75 (D.C. Cir.
1984) ("As is evident, § 205, unlike § 206, allows the Commission to approve rate
increases without a showing that current rates are unjust and unreasonable; it need only
find the *proposed* rates to be just and reasonable.").

reasons for granting waiver of Byway facility cost allocation.[71]  With regard to Joint Parties' argument that the Commission failed to consider the evidence justifying the need for SPP's proposal in this proceeding,[72] any evidence of a need for the proposal does not overcome the Commission's finding that the proposal was not just and reasonable due to concerns that it provided too much discretion to the SPP Board and could result in unduly discriminatory outcomes if the SPP Board reaches opposing conclusions for otherwise nearly identical facilities.

### 3.     Whether the Commission Unreasonably Dismissed SPP's Compliance Filing that Addressed Concerns about SPP Board Discretion

#### a.     Request for Rehearing

38.     Joint Parties argue that, because the Commission erred in reversing the Tariff Order, the Commission also erred in dismissing as moot SPP's compliance filing in response to the Tariff Order.  Joint Parties urge the Commission to reinstate the Tariff Order and to accept SPP's compliance filing.[73]

#### b.     Commission Determination

39.     Consistent with the Commission's finding in the Rehearing Order, we continue to dismiss as moot SPP's compliance filing responding to the Tariff Order.  The Commission in the Rehearing Order rejected SPP's proposal in this proceeding and found "that SPP's proposal, *even as modified by the Commission's directives in the Tariff Order*, continues to grant the SPP Board too much discretion in allocating the costs of Byway facilities."[74]  For the reasons stated above, we continue to find that SPP's proposal, as modified by the Commission's directives in the Tariff Order, is not just and reasonable.  We sustain the decision to reject SPP's compliance filing as moot given that determination.

---

[71] Rehearing Order, 184 FERC ¶ 61,028 at P 50.

[72] *See* Request for Rehearing at 22-30.

[73] *Id.* at 31-32.

[74] Rehearing Order, 184 FERC ¶ 61,028 at P 50 (emphasis added).

### 4.  Whether the Commission Erred in Finding the Possibility that the SPP Board Could Grant a Cost Reallocation Request Raises the Potential for Unduly Discriminatory Outcomes

#### a.  Request for Rehearing

40.     Joint Parties argue that the Commission in the Rehearing Order failed to explain why SPP's proposal permits the SPP Board to treat cost allocation waiver requests differently with potentially disparate treatment and unduly discriminatory outcomes.  In particular, Joint Parties assert that the Commission failed to justify departing from its finding in the Tariff Order that it was reasonable to determine whether a Byway facility met the Benefits criterion based on at least one of two methods that the Commission has previously found reasonable – adjusted production cost savings and savings through the Integrated Marketplace.  Joint Parties describe the Commission as effectively deciding that the existence of options may lead to unduly discriminatory outcomes and prohibiting any tariff provision that permits analysis of a request for waiver of Byway facilities cost allocation based on more than one factor.[75]  Joint Parties maintain that the Commission speculated without support that SPP's proposal may lead to unduly discriminatory outcomes and ignored SPP's explanation that "the and/or basis for satisfying the Benefits criterion is flexible in order to recognize benefits can be demonstrated in either or both of two ways, not to create a mechanism for undue discrimination."[76]

#### b.  Commission Determination

41.     We find that the Commission adequately justified rejecting SPP's proposal due to the potential for unduly discriminatory outcomes.[77]  As described above,[78] we find that the Commission reasonably explained that SPP's proposal in this proceeding raises the potential that the SPP Board could reach inconsistent cost allocation outcomes when responding to different requests by relying on different criteria to grant or deny a reallocation request, regardless of whether the circumstances of both requests were identical.[79]  Contrary to Joint Parties' assertion that the Commission speculated without support to find that the SPP Board's proposed discretion to invoke a different benefit criterion when reviewing two requests with identical circumstances may yield unduly

---

[75] Request for Rehearing at 32-33

[76] *Id.* at 33 (citing Compliance Filing at 5-7).

[77] *See* Request for Rehearing at 32-34.

[78] *See supra* PP 29-30.

[79] *See* Rehearing Order, 184 FERC ¶ 61,028 at PP 50-54.

discriminatory outcomes,[80] we find that the proposed Tariff language provides discretion that would have permitted the SPP Board the opportunity to reach arbitrary and inconsistent outcomes without justification when presented with similar facts. Although Joint Parties suggest that SPP has stated the proposal is not intended to allow for unduly discriminatory results, they do not dispute that such results are, in fact, allowed under SPP's proposal.[81] This is not permitted under the FPA[82] and we need not address whether another, hypothetical proposal that might allow options for demonstrating benefits could be just and reasonable and not unduly discriminatory or preferential.[83]

---

[80] *See* Request for Rehearing at 33-34.

[81] The Commission need not show any intent to discriminate where the proposed rate facially permits an unduly discriminatory result. *See Env't Action v. FERC*, 996 F.2d 401, 410 (D.C. Cir. 1993) ("We have also overturned the Commission where a rate design on its face produced discriminatory cross-subsidizations of some customers by others.") (citing *Elec. Consumers Res. Council v. FERC*, 747 F.2d 1511, 1515-16 (D.C. Cir. 1984)); *see also Ala. Elec. Co-op., Inc.*, 684 F.2d 20, 29 (D.C. Cir. 1982) ("In the typical case, where the section 205(b) challenge is raised against a rate design calling for different rates to customer classes which are similarly situated, the utility has the burden of satisfying FERC that such differences exist between the classes as to justify the separate rates. Only if the utility fails to carry this burden will the rate be found to be unduly discriminatory and unlawful.").

[82] *See State Corp. Comm'n v. FERC*, 876 F.3d 332, 335 (D.C. Cir. 2017) ("[D]ifference in rate design can be discriminatory only if the contested design 'has different effects on similarly situated customers,' and even then only if the differences cannot be justified.") (citing *Transmission Agency of N. Cal. v. FERC*, 628 F.3d 538, 549 (D.C. Cir. 2010); *Ark. Elec. Energy Consumers v. FERC*, 290 F.3d 362, 367 (D.C. Cir. 2002))).

[83] *See Cities of Bethany v. FERC*, 727 F.2d 1131, 1136 (D.C. Cir. 1984) (Commission has interpreted its authority to review proposed rates under FPA section 205 as "limited to an inquiry into whether the rates proposed by a utility are reasonable-and not to extend to determining whether a proposed rate schedule is more or less reasonable than alternative rate designs.").

### 5. Whether the Commission Should Set SPP's Proposal for Hearing and Settlement Judge Procedures or Initiate *Sua Sponte* an FPA Section 206 Proceeding

#### a. Request for Rehearing

42.     Joint Parties request that, if the Commission rejects their arguments on rehearing, the Commission either:  (1) grant rehearing to establish hearing and settlement judge procedures due to SPP's proposal raising issues of material fact; or (2) initiate an FPA section 206 proceeding to establish a just and reasonable cost allocation mechanism for Byway Facilities in "Generation-Rich Zones."[84]

#### b. Commission Determination

43.     We deny Joint Parties' request to set SPP's proposed rate for hearing and settlement judge procedures or to initiate an FPA section 206 proceeding to investigate whether SPP's current Highway/Byway cost allocation method is just and reasonable. Both actions—setting a proceeding for settlement judge procedures and initiating an FPA section 206 proceeding—are within the Commission's discretion to initiate.[85]  Consistent with the discussion above, we are not persuaded by the information that Joint Parties submitted to exercise that discretion to initiate an FPA section 206 proceeding. Moreover, the Commission rejected SPP's proposal because it provides the SPP Board with too much discretion in allocating the cost of Byway Facilities if the SPP Board reaches opposing conclusions for otherwise nearly identical facilities, and we find there are no issues of material fact with respect to SPP's proposal that would warrant setting this matter for hearing and settlement judge procedures.

---

[84] Request for Rehearing at 28.

[85] *See Pub. Citizen, Inc. v. FERC*, 839 F.3d 1165, 1174 (D.C. Cir. 2016) (FPA section 205(e) does not require Commission "to either set the disputed rates for hearing or affirmatively disapprove any unjust or unreasonable rates through the Section 205 process."); *MidAmerican Energy Co.*, 138 FERC ¶ 61,028, at P 8 (2012) ("The Commission has discretion to initiate Federal Power Act section 206 . . . proceedings, either on its own motion or at the request of others." (footnote omitted) (citing *Gen. Motors Corp v. FERC*, 613 F.2d 939, 944 (D.C. Cir. 1979); *S. Union Gas Co.*, 840 F.2d 964, 968 (D.C. Cir. 1988); *Iroquois Gas Transmission Sys.*, 69 FERC ¶ 61,165, at 61,631 (1994); *JMC Power Projects v. Tenn. Gas Pipeline*, 69 FERC ¶ 61,162 (1994), *reh'g denied*, 70 FERC ¶ 61,168, at 61,528 (1995); *aff'd*, *Ocean States Power v. FERC*, 1996 U.S. App. LEXIS 11096, at *18 (1996)).

<u>The Commission orders</u>:

      In response to Joint Parties' request for rehearing, the Rehearing Order is hereby modified and the result sustained, as discussed in the body of this order.

By the Commission.  Chairman Phillips and Commissioner Clements are concurring
               with a joint separate statement attached.

( S E A L )

Debbie-Anne A. Reese,
Deputy Secretary.

UNITED STATES OF AMERICA
FEDERAL ENERGY REGULATORY COMMISSION

Southwest Power Pool, Inc.                     Docket No.  ER22-1846-004

(Issued December 19, 2023)

PHILLIPS, Chairman, CLEMENTS, Commissioner, *concurring*:


1.  We concur in today's rehearing order, which sustains the Commission's decision to reject Southwest Power Pool, Inc's (SPP) proposed revisions to its cost allocation methodology.

2.  We are sympathetic to the Joint Parties' concerns that the Commission's decisions in this docket have caused parties to spend considerable resources over several years, without a solution to the deeper cost allocation challenges that prompted SPP's filings in this proceeding.[1]  In the absence of a satisfactory resolution to those underlying challenges in this case, Joint Parties have understandably asked the Commission to initiate a broader 206 investigation or hearing process.  As discussed in the order, the Commission has declined to exercise its discretion for either procedural vehicle.[2]

3.  However, we write today to suggest a different pathway.  While the Joint Parties have raised compelling points that revisions to the Highway/Byway cost allocation approach may be appropriate under these circumstances,[3] in our view the best path forward to address this issue would be an open, collaborative process between the relevant parties and stakeholders.  Such open dialogue would allow for fulsome exploration of any legal

---

[1] Joint Parties' Request for Rehearing at 6 (arguing that the ruling would "leave customers in certain geographic areas in SPP to fund the cost of transmission facilities for which those customers do not receive commensurate benefits" at a time when SPP is experiencing an energy transition that includes increased levels of wind generation); Letter from Senators Roger Marshall and Jerry Moran, Docket No. ER22-1846 (Sept. 6, 2023) (explaining that the Commission's first rehearing order leaves in place a cost allocation methodology that, due to the rapid expansion of new wind generation resources, results in high costs for Kansans and the Sunflower Electric Power Corporation pricing zone); Letter from Congressman Ron Estes (Nov. 29, 2023) (addressing cost concerns on behalf of Kansan ratepayers).

[2] Order at P 43.

[3] *See, e.g.*, Joint Parties' Request for Rehearing at 21-31.

Document Accession #: 20231219-3049     Filed Date: 12/19/2023

Docket No. ER22-1846-004                                                      - 2 -

or administrative barriers to potential cost allocation approaches, without some of the rigidity of a contested proceeding.

4.  We recognize that this dialogue will also take time, but given the thorny, challenging nature of these issues, such dialogue would be highly beneficial.  The rehearing process afforded by the Federal Power Act is an opportunity for parties to seek a changed outcome, while preserving their arguments for appeal, and for the Commission to ensure that its decisions are legally sound.  But it is not the ideal venue for the collaborative discussions that we envision would lead to durable policy solutions.  Such dialogue may offer potential for a stakeholder-driven policy solution, or alternatively, provide essential insight and perspectives to guide the Commission's evaluation under section 206 of the Federal Power Act, including establishing a future record for a cost allocation methodology consistent with the beneficiary pays principle.  We encourage relevant parties and stakeholders to focus on such efforts.


        For these reasons, we respectfully concur.



_____                    _____
Willie L. Phillips                         Allison Clements
Chairman                                   Commissioner

Document Content(s)

ER22-1846-004.docx.....................................................1